Good morning. Good morning. May it please the Court. My name is Regina Pangerl and I'm here today as the parent of Tiffany Pangerl, who's referred to in our brief as TP. I'm representing her here because we couldn't afford to continue with counsel and so I will do my best today. I would like to reserve five minutes for rebuttal if I may. We'll try to help you. Keep your eye on the clock, okay? Okay, thank you. There are five main issues before the Court today. The lack of parental participation in the IEP meeting and resulting IEP. Accompanying with that is the denial of ESY services determined in that same meeting. Also, the lack of appropriate transition plans and services in the claim period IEPs, as well as failure to implement speech and language for almost a year and failure to implement math services for an entire semester. So I'm a little unclear about exactly what happened at the meeting. The one of you, you had two advocates as well as family members meeting with the school officials. They met for, one of the advocates said that he or she had to leave after two hours. So two hours is completed and the hearing is not finished. The negotiation, if you will, is not finished and the advocate has to leave. The school official said, well, we need to finish this today, but we'll give you a chance to review it later. And here's the part I'm unclear on. It looks like all of you just walk out. Well, I don't understand why that occurred. Sure, I will be happy to explain that. So how much limited time was remaining at the beginning of the meeting? Our advocate who was there with another training advocate did say she had to leave after two hours. The meeting was scheduled and agreed upon for two hours. The school district's coordinator who was conducting the meeting also said near the end that she also had to leave in ten minutes. So the meeting went on for, I think, about two hours and eight and a half minutes, at which time the meeting was adjourned. So the meeting was adjourned for an additional 20 or an additional 20 minutes after the two hours was up? Altogether, Your Honor, it was about two hours and eight and a half minutes. Okay, after the two hours, the initial two hours or that in total? Oh, altogether, Your Honor. Okay, so we're talking eight minutes. But didn't your team, you and your team, meet with the school district and there was agreement on that? There were after-the-fact meetings in January and in February, Your Honor. One was to address transition issues, one was to address speech and language, and those meetings were limited to that. But again, what I'm saying is I know you're basically claiming you didn't get due process. You have a two-hour meeting. Correct. People come and go, and that's an unfortunate thing. But the reality is whatever was left unsaid before got taken up in January and February of 2013, right? No, that's actually not true because there were numerous substantive areas of the IEP that we had not yet reviewed. In fact, the school district admits in its prior written notice, which, by the way, was the first time that parents even knew that they continued to meet without us. They were also leaving. The meeting was ending. You say they. Who do you mean? The school district. I apologize. Yes, we were not aware that they were going to continue meeting. They wanted to complete the IEP document, not the meeting. Parents requested the meeting be continued pursuant to Doug C., which doesn't allow after-the-fact meetings to cure a fate violation for denial of parental participation. I think the advocate said when we reconvene or something like that. That was actually the school district representative kept saying, you know, actually at the end of the meeting she said, before we meet to reconvene. And that's when our advocate said, but wait a minute, we can't implement this. It's not done. And the district went forth and did it anyways. Counsel, with respect. I'm sorry, I don't understand that. Sure. Did, if the advocate had to leave because of, is that what happened? It was set for two hours and there was a time deadline on the part of the school district. I apologize. The district was giving us deadlines throughout, 30 minutes left, 15 minutes left, et cetera. And then Ms. Hare, who was conducting the meeting for the district, also said she had to leave when the advocate said she had to leave. They both had to leave. She was ending the meeting. She said, before we meet to reconvene. And that's when we realized they're going to try to implement this. We haven't discussed special education services or minutes or related services. What is reconvene? I don't understand. Now I'm confused. I thought they were going to meet to continue the, reconvene meaning to continue the discussions. That's what we understood. But as it turned out, we later received the prior written notice notifying us that the school district had gone ahead, met alone without us for another 20 minutes, made the remainder of the IEP decisions without us. We had not been aware that that was going to occur. Let me, again, question what's in the record. I thought they said, we have to finish the IEP because the time period is up. So we have to do that. They said they told you that. They met. If you disagreed, you met again in January and February of 2013 to talk about any issues that they had. Is that wrong? They did say that, that that's what they were going to do, but that violates this court's decision and the Doug C. case. We requested that we just reconvene. With respect, counsel, that case is very different. I've done a lot of IDEA cases, and I can tell you that these are not perfect. But you're entitled to due process. You're entitled to make your position known. The particular piece where you didn't get due process. You met for a long time. You had lawyers there. You're a lawyer. You're a mother. You're her chief advocate. You left, too. You didn't have to leave. They met with you then again in January and February. If you had a problem with the IEP, you could raise it then, right? So you weren't deprived of due process. Well, we did raise the issue that the legal counsel with us, but it was the law requires that the school district, even though the IEP is expiring, would still have had to provide our daughter with services. And they claimed, if I understand correctly, they claimed that in order to do that, they had to finish the IEP in the time framework involved. And that's why they went on this additional short period of time. I guess, at least from my perspective, you've got due process. And under the IDEA, that's what you're entitled to. So maybe we can move on to what you believe are your more persuasive arguments. Well, the school district, parental participation is a very vital issue in the IDEA. We had no idea they were going to continue to meet without us or we would have been in the state. Even Ms. Hare said she was also leaving. You're claiming they did not say they were going to continue and finish it? Continue the meeting. Right. And finish the IEP. Our understanding, Your Honor, was that they were going to implement the IEP they had drafted before the meeting. They were not going to continue the meeting itself. Well, I thought they said that we were going to finish the IEP tonight. Who said that? The IEP document, yes. That would have been Ms. Hare of the school district. School district. And it was that point that you said that you were surprised? No, at that point we said, are you going to implement this IEP when we haven't gone over all of these other sections? And she said that's the direction. So you knew when you left the meeting, rightly or wrongly, that the school district was going to continue to meet and make IEP decisions without us. This was all taped, yes? Correct. So I haven't listened to the tape yet, but my law clerk gave me a note that the school officials, quote, stated repeatedly that they planned to continue the meeting to finish the IEP. Now, I'll go and listen to that tape, but are you saying that's not accurate? They were saying they were going to complete the IEP, but not the meeting. Ms. Hare even said she had to leave. The IDEA requires that we meet at a mutually convenient, agreed upon time and date. What did you understand them to mean by they were going to complete the IEP if they weren't going to work out all the necessary components? Sure. It was our understanding they were going to implement the IEP document. They had already brought it as written. In fact, the district, I think, already noted in its arguments that it wasn't much different from the draft, and that was our understanding. They were implementing it then because they didn't want to be out of compliance with the deadline, which Doug C. says you have to over an expiring IEP. Well, then, I guess I had trouble when I listened to the tape as to who was saying, which side was saying what. So what was it that you wanted to happen when they said we're going to finish it tonight? We asked that they not implement it, but that they allow us to come back and to finish the discussion, as opposed to just implementing what they drafted before the meeting. So who did you – maybe I didn't understand. Who did you say – who said when we reconvene? That would be Ms. Hare. She was the school district. Correct. And you didn't want to reconvene? We wanted to reconvene, absolutely. We asked if we could have another meeting to finish it, and they denied that request and said they were just going to – But you did have a meeting. You had two meetings, one in January, one in February, where you discussed the IEP and possible changes, right? Yes, but those meetings were not to create the 2012 IEP. Those were to make addendum, which according to Doug C., cannot cure a violation. If a school district creates an IEP without parents, they are not allowed to cure that by an after-the-fact subsequent meeting. Well, if at the end of the two hours there were still things to be discussed, and I believe one of the advocates listed them. Yes. Then what should have happened? I'm not quite understanding what you say should have been done then. Sure. The school district could have very easily scheduled a second meeting so that we could have completed the discussion. That has happened in the past. When was the deadline? I believe it was December 3rd, and as I recall, we even proposed dates prior to that deadline so they didn't have to miss a deadline, but that was rejected by the school district. Do you want to save time? It's up to you, Counsel, but you're down to just go over two minutes. Yes, I would like to save a little time. Thank you. Very well. Good morning. Good morning. Erin Walls on behalf of the Peoria Unified School District. And just to correct something that I just heard, a parent stated that she offered to meet again before the deadline. That's not in the record. That is not what happened here. As to the parental participation, first off, this parent participated. There's no denial of participation. A draft was circulated before the meeting. There was a history with district and parent. Parent and her advocates would go through the draft. They'd mark it all up. They'd walk into a meeting. We've got stuff to talk about. This time they got the draft. They walked into the meeting. There's no edits. There's no revisions. There's a statement by an advocate. We're never going to agree to this. So two hours is counting down, and everybody — it's heated. It's one of those. We've got lines drawn, and everybody's — I'm sorry. No, I was not. There was no attorney for the district present. But I listened to the recording as well, and it's heated. And one of the advocates says she has to go. There is no question that this team intended to complete the meeting. Parents stated no reason that she had to leave. The other advocate present had no reason to leave. So when we look at what this court held in Shapiro, if there is an affirmative refusal to participate, the district can proceed. There is nothing more affirmative than standing up and walking out. If I stand up and walk out of this court while you're asking me questions, you are going to see that as refusal. So the parental — You're not planning on doing that, are you? No, I am not, Your Honor. I would not do it. But if I did, I know what you would think. I would think the same thing. Well, here's what's troubling me. If they've met — and this is difficult. This is a very seriously incapacitated child, and there are serious problems here, and there are a lot of details and a lot of things that need to be worked out in an IEP. So they are in a meet for two hours. And if the parent or the advocate for the parent or the parent says, we have to leave, we're going to have to come back later and finish this, and the district says, no, we're going to finish it tonight, whether you're here or not, that seems to me to be very problematic as far as whether the parents were given their right to participate in this IEP under our law and under the purpose of the statute. So I'm just — I'm not understanding who in the meeting was trying to get it reconvened so they could finish. It sounded to me like it was the advocate for the parent and that the school district was insisting, no, whether you're here or not, we're going to finish it. So in the two hours that had already gone by, the district kept trying to move it forward because everyone knew there was a deadline. And it was facing a situation where a lot of — That deadline being the two — The deadline to renew the IEP. The year, okay. Correct. So there were a couple of things that were going to happen. The IEP that was in place was drafted by students' private placement one year prior. She was now in a district high school with no goals left to work on. So the district knew that something had to be in place to implement. It was happy to come back and talk about it more, but they had — Well, the deadline was December — Third. Third. And this took place when? I believe December — November 29th is the date. So we have four days. My recollection, when I check the calendars, we also have a weekend in there. But in order to continue to provide FAPE, the district made a reasonable determination at the time. Now, keep in mind, Doug C. didn't exist on November 29th. But the district still made a reasonable determination under Shapiro, which was, we have to give this student FAPE. She doesn't have any goals. Her parent is choosing to walk out. We're almost done. Come on. Let's just — they hashed out all the goals. They hashed out all the present levels. There were no dramatic changes made from draft to implementation version. Well, somebody — I thought it was one of the advocates said that we have all these things still to discuss.  You're correct. So what the district did — But really, they were taking the position this isn't done at all. No. I agree. That is the position that they took. And the district response to that is they still participated. They had a draft. They looked at it. They — this is a review. We're sitting in an IEP meeting. This is the time to review it, not to accept every single input that the parent insists upon. And if there was a very — I mean, this is a back and forth. It's — they don't have a veto right. There is no parental veto to the draft that they were presented with. I gather that the district takes the position that it made a reasonable determination that contrasting continuing the meeting to finish the IEP so that it would be timely, particularly given the student's then placement, versus taking a chance that it wouldn't be done greater risk both for the student and for the district than what it did, basically. Right? You are correct, Your Honor. I mean, if we look at it as we have competing procedural violations in front of us, it is the district's obligation to choose the one least likely to result in a denial of FAPE. And they did. I'm sorry. Forgive me. On a different issue, but since we're talking about deadlines, there's this requirement that the administrative law judge issue the final written decision 75 days after the filing of a due process complaint. And that wasn't remotely complied with, was it? No, it was not. However, that is, again, a procedural violation. There has to be some attendant denial of FAPE. And there is none alleged. I guess what it bothers me. How long was it? I — you know, from the — when the hearing concluded to the issuance, I think it's about four months. And isn't the reason Congress put that requirement in there is because the very nature of these cases requires some expedition. They were dealing here with the ongoing education of seriously disabled people. And we need to not just let it go by way of default. So why wasn't there maybe some inherent prejudice in that delay? Well, the bulk of the delay is prior to the actual hearing, and that was a parent-based issue. Those were choices made by parent to delay, to continue, to prolong. We did not — we're not picking that fight because it is part of our system in Arizona that, for the most part, those requests are given. But the truth is, is that we can only fight so many battles. And if Perrin wants to delay the hearing for six months, that's going to happen. What we can do as a public school district in Arizona is ask the ALJs to expedite those — the final decisions. This one took four months. It is a 41-page decision. And in his defense, I would say that at the time he wrote this decision, this was the longest hearing in Arizona OA history. So it was the behemoth of IDEA hearings, and he did a formidable job with his 40-plus page decision. If there is any inherent denial of faith, it was not to this student. It isn't the idea of IDEA. I mean, the bottom line is we're trying to help the student. That's the real issue. Agreed. There are due process requirements involved. I've never seen a perfect IEP. I've never seen a perfect FAPE. They just — people — there's a give and a take. And you try to make it work. If there's a delay, it's kind of like what we deal with in terms of equitable estoppel and things of that nature, where — what was the damage? What was — who was hurt? And I gather from your documentation, your perspective about the delay in the 90-day hearing thing was, hey, nobody really got hurt here. We — the student got what was stated in the IEP, and the ALJ found that. So if there was a delay, it was a procedural delay without what we would call prejudice in our setting here. Do you agree with that? I would agree with that, Your Honor. It's what I call a no harm, no foul. There simply was no attendant harm to the student, certainly that her mother ever alleged. So there is nothing on that piece in the record that would substantiate a denial of FAPE based on the ALJ's prolonged time period to issue this decision. Let's talk for a moment about the transition services. Certainly. I think you — at least the pleadings admit that it was pretty — what shall I say? It was not a very well-drafted situation about what the transition was or something about working in her mother's office or something else. If that — if there is a poorly drafted portion of the IEP, whose fault is that? Is it the burden of the student and the student's representatives to come forward with what in this case she wanted to do, or is the school district responsible for ginning that out of her, helping her decide, and putting it in very clear language? In the realm of transition services, there are obligations on the district as well as the parent and student. And this particular student, in our new language out of NJU, these were her unique circumstances. She was unable to articulate post-secondary goals. The 2010 IEP, parent says, and I'm paraphrasing, not quoting, as they're talking about transition services, she's going to work at my office when she's done with high school. We don't need to do that as to transition services. In the 2011 IEP, the district's trying to work on transition services and the advocate. The same one who had to leave in 2012, in 2011 says, that's all she can handle. Don't put any more in. So the district is trying to figure out how do we help this student. The parent is trying to help. She didn't have any more ideas of what this student wanted to do. In fact, their own transition expert, who they hired in January of 2013, couldn't come up with any more specificity. So it was just students' unique circumstances. Her maturity was delayed. And General, at least, is continuing to provide those services. She's taking financial math. She's taking life skills classes. This is moving her forward in the only way the district can, when no one will say, I'd like to do A, B, or C. The district's not responsible for determining what, in this case, a delayed high school student decides she wants to do with her life, basically. No. Not only is it not our job, we can't. We can't force her on a path to be one thing or another. As to the speech services in 2011, those services were offered multiple times by multiple providers. Two providers at students' private school that parent expressed she did not like, she didn't like who they were, how they worked with student, and declined, literally ceased speech services. The district then offered to bus student to a district school to receive speech services, and parent declined that, and instead is now seeking compensatory services. The law is pretty clear that you're not allowed to choose the staff as a parent that provides the services. There were — there was a ready, willing, and able offer at her private placement. There was another offer by the district, at least one, and these were all declined. So there is no right to compensatory services as to that. And finally, the claim on math services feels a little bit like a moving target. Parent requested 69 hours of compensatory education in the administrative tribunal. The ALJ, who heard all the evidence and was in the best position, ordered 40. Now parent's claiming 120. The 120 would have been in a group setting. The 40 was with a one-on-one instructor. Is that correct? I don't know what parent wanted. The 69 is what she requested of one-on-one. The 40 is one — is also one-on-one. Okay. If there are any further questions? I think not. Thank you. Thank you, counsel. All right, counsel, you have some rebuttal time. Thank you. To address transition, I would just like to note that the district made admissions, that they had failed to provide appropriate assessments for transition, had failed Tiffany with regard to transition services. Counsel, let me ask you. You're her mom. Yes. What did you tell the district your daughter wanted to do and you wanted built into the transitional portion of the IEP? I don't recall. Specifically, there were several meetings, but I did email the district after the 2011 IEP and notified them that she was going to need additional transition services, that she would not be able to work in my office. And the district never amended that IEP and allowed it to remain for a year. So you originally said she would work in your office, but there was a change of heart, right? Well, that might have been her desire. Okay. But as a parent, I notified the district that that was not going to work. I think any of us that's ever been a parent appreciates your predicament. I mean, we can't always tell our kids what would be great. Right. But if she doesn't – Have we ever told her? Right. If she doesn't tell you and you don't know, how is the district supposed to know what she wants to do? Well, the district's transition expert testified that it was the district's responsibility to help her locate a direction. After we filed for due process, Your Honors, the district submitted a whole slew of transition assessments that they admitted usually take three to four years. That was not done during the course. And also, I just wanted to note, with respect to the IEP meeting, we didn't leave early. We actually stayed late. We didn't choose to end the meeting. The district was ending the meeting. And also, with respect to the delay, I think it was six months before the ALJ issued his ruling, just so the court knows that. And with respect to speech and language, in my brief, I've outlined the numerous times the district said it would provide services. The busing, they wanted to bus her one way. So that was not going to work. But there were numerous others. Let me ask you one more question. Your time has expired. Sure. Thank you. But if I could ask the indulgence of my colleagues. Please. Right. We're here many years after all of this took place. Yes. What is a practical matter that you want the courts to do now? You want compensation for what you've had to spend. But so far as services and other things, what can be done? Yes. We would like to have Tiffany compensated for what the school district should have provided with respect to transition and speech and math services. And we're certainly open to working with the district on what that looks like, depending, of course, on what this court does and if there's a remand. But certainly we're willing to work with them to ensure that she does receive what she should have. You're talking money? Money damages? Is that what you're looking for? Yes. Thank you. All right. Any other questions by my colleague? Thank you both. We know these are difficult cases, and particularly for you as a mom. So we empathize with that. But as you know, we have to follow the law. So we'll do our best, okay? Very good. Thank you. Thank you both. The case just argued.
judges: Schroeder, M. Smith, Rakoff